I don't think they're here for the dog bite case. I'm going to move my law clerks out. Yeah. Clerks, would you come inside the bar? Other lawyers may, too. Come inside the bar. And I do think we're about to reach capacity. So we will shut the doors here in just a moment. This argument can be heard live through the court's website, by the way. There's our clerk of court. Okay. Let's close the, yeah, there we close the bar. Now close the doors. Okay. Please call the next case, Ms. Lesk. The third case for argument is 23-3034 from the District of Minnesota, Daniel Irish v. Keith McNamara. Okay. Ms. McLaren. May it please the Court. My name is Sarah McLaren, and I am here today on behalf of Appellant Deputy Keith McNamara. This is an unusual case. This is the first case in which a federal circuit is being asked to decide whether a canine bite of a fellow officer qualifies as a Fourth Amendment seizure, an excessive force. Now, I want to be very clear. Deputy McNamara is not claiming that no officer could ever bring such a claim. Deputy McNamara fully agrees officers like all of us are entitled to their own constitutional rights, and he, of course, never meant for his friend and fellow officer to be bitten. What Deputy McNamara is saying here today is that officers, like everyone else, can only recover under Section 1983 if they can show not only that constitutional violation occurred, but also that existing precedent squarely governs the specific facts at issue. Here Help me distinguish between the case where there's a grieving family member putting flowers at a grave and the case at bar. Absolutely, Your Honor. And I guess I'm talking about the prong one of the analysis. Yes. Determining whether there was a seizure. Yes. Yes. And I would say, in my mind, at least I organized, we almost have two prong ones, because we have the seizure and then the excess, whether the force was objectively unreasonable, if we get past the seizure, to the excessive force claim itself. But focusing on prong one of the first question, whether or not there's a seizure, I think there has to be a particularized inquiry as to intent with respect to that specific plaintiff. Whose intent? The defendant officers, Your Honor. Their subjective intent? Well, I think the law is somewhat unclear on that. Counsel, Torres case, it's unclear. Sorry for stepping on your question. Okay. Counsel says, it says, the appropriate inquiry is whether the challenge conduct objectively, I'm quoting the U.S. Supreme Court, objectively manifests an intent to restrain, for we will, they say, rarely probe, I think that means rule out, the subjective motives of the police officers in the Fourth Amendment context. I think we're talking about objective here, Counsel. Okay. And that's fair, Your Honor. As we've argued in our briefs, we have argued we meet either standard, objective or subjective. I would say that Torres itself lends credibility, or excuse me, lends support, in essence, to our arguments here, because there, again, they were not looking at a generalized intent to seize anyone in an area. They were looking at an intent to seize Ms. Torres, who was undisputably the person they were trying to. Okay. Counsel, you're back to subjective. Objectively, we've had a lot of dog cases. I think we probably have more than any other circuit. But if you look at it, it seems clear from everything your parties say and everything the experts say that when you let the dog loose, he gets the nearest person. So why isn't the objective intent to bite the nearest person? I want to make sure I understand the Court's question. Yeah. Is the Court asking why isn't the release of the dog itself sufficient objective intent for whomever the dog bites? The nearest person, Counsel, which is why we require the warning, which is clearly established, and I understand, not here. So why isn't that the objective following Torres and following the objective intent to restrain? When you loose it, it's going to get the nearest person. Okay. And that is a specific. Sure. And now I do think this is, I just want to be clear that I agree that's the record right now. I do think we're at Rule 12, so I do think there's some nuances to canine training that we'll be able to get into should this case survive beyond Rule 12. So I just want to make that clear. And on warning too, I bet. I understand it's disputed about the warning sort of. Go ahead. Absolutely, Your Honor. So what I. . . It is disputed about the warning, right? Yes. Okay, proceed. Absolutely. Yeah. So what I would say with regards to the seizure question is I think that in order to have the release of the dog constitute a general, sufficient objective intent to seize the first person. Nearest person. Excuse me. Nearest person, which I would argue at the time of the release was the suspect. Because at that point in time, the. . . Then it's a disputed fact. No, Your Honor. It's not because of the video. Because in the video, which I did supply to the court, hopefully the court received it, Officer Irish was outside of the cemetery at the time the dog was released. There's no dispute as to that. He's responding in his squad car with his siren, responding to the cemetery, but he's not there. So the nearest person, which is, I believe, the wording, Your Honor, preferred for the dog, that was the suspect at that point in time. So I would argue even under that test, the objective intent. And they've said that. He released the dog. In their brief, they said to apprehend the suspect. So I don't believe there's really a dispute as to. . . And I know subjective, objective. To the extent we're saying the release of the dog itself is an act showing his objective intent, that is. . . I believe we meet that test as well, Your Honor. What I will say with. . . I want to get back to Your Honor's question about the grieving. . . the hypothetical grieving widow. What I'll say again, too, is we would need to look at that inquiry as to. . . Was the widow herself outside the cemetery at the time she was released? Maybe from the hypothetical, it's understood she's right there. Is there. . . Is there. . . Is she provided with any information over any communication device she may happen to be wearing, similar to Officer Irish, about the presence of the dog? So has it really come down to the. . . quote, unquote, victim of the dog bite, their impression? Well. . . Of whether or not they were seized? Or how does that play into the transferred objective intent of the defendant? Well, I don't think you can transfer intent, Your Honor. So I think this is. . . And I think they would concede that, that this is not a transferred intent case. I think what they're trying to argue is that the release of the dog itself is sufficient objective intent to seize anyone. The nearest person? Pardon me? No. Are you sure they're. . . Yeah, I was just going to say what I think you were going to say. No, it's to seize the nearest person. And, you know, under these circumstances, you're fortunate that it's a cemetery at the time of day that it was, right? Because, you know, the nearest person is most likely the suspect. Change this into a park. You release the dog. I mean, the nearest person could be any doggone person, right? But also in that cemetery, when the dog's released, you don't know who's exactly where in that cemetery, right? So you give the warning, which is disputed. And if it's disputed, that's a fact that we can't decide, right? Well, now we're getting into warning, which I do want to get a chance to address. Well, yeah, but what I'm really saying is this. The dog's released to seize the nearest person, whoever that is. And if you are unfortunate enough to be the nearest person, aren't you the target of the force that's being set forth? And I'd be okay with that rule. I mean, I hear the court's concern with what could have happened. And the district court was very concerned with that as well. And that's understandable. I mean, I think the facts that this was a rainy cemetery on a cold March day, not a nice March like we've been having, but a usual March in Minnesota, I think that played into the deputy's calculus. We're at Rule 12, so I can't have him testify to that. But I'm sure that will come into evidence should this case move forward. But if this court wanted to establish a rule in this case that the release of the dog, because it hasn't had a bystander case yet. It's had cases where they always thought it was the suspect. And that would be similar to, I think, what the Collins case somewhat did, too. And I think we meet the test in Collins. Well, what about the Adams? Go ahead. So you just mentioned that we haven't had a bystander case, but the officers have always thought it was the suspect. Isn't that the subjective intent that you're backing into? Well, and so then I guess what I'm hearing the Court say, then, is that language from the old cases should be disregarded because of Torres? Because the cases did look at the case, the cases from this Court. Which one specifically? Okay. So I would say, excuse me, Kua, Sosla, and Adams. Oh, you think Adams looks subjective? No. No, Your Honor. I'm sorry. No, no, Your Honor. I misspoke. That was not what I was about to say. The Reeves and Adams case. Go ahead. Yeah, the Reeves and Adams case. None of them explicitly examined the seizure question. So I don't think it explicitly reached the question of intent, at least in the wording of the opinion, which, I mean, Your Honor knows it better than I do. So I'm misstating it. Now, I would say in Whitworth, most recently from this Court, the most recent Dodd case, it did cite to Torres. It also cited to Moore v. Indahar. But that was a completely accidental sort of situation, right, which is not the case here because we had a deliberate release of the dog. Absolutely. There is a deliberate release of the dog. I wonder if Whitworth is, once that point is conceded, whether it has any relevance to this case. The relevance that I would see Whitworth have, and then I would like to shift and at least somewhat address the warning in clearly established law, because I see my time is diminishing. The relevance of Whitworth is that it cites to Moore v. Indahar, which, and so when you are, which talks about, you know, shooting at one person and hitting the next person, that is still a relevant inquiry for the Court to examine, Moore v. Indahar. And so Moore does somewhat look at subjective intent. Now, if we want to throw that out the window with Torres, I don't think it's clearly established at that point. That could be a new statement by this Court. But even if this Court were to find it was already clearly established that you look at an officer's objective intent with regards to a dog release, regardless of who is bitten, I think we still meet that test, given it. I assume if you find, if we find that there was a seizure, your argument is that it was not a clearly established right. Absolutely. Okay. So what is the closest, worst case for you? In other words, what case comes closest to establishing this right? You're going to say it's distinguishable, right? But, I mean, what's the case I should look at and say, look, this is the furthest we've gone, but it's different from this case. Yes. And I would say it's the Sasla case, if we're looking at authority from this Court. Because I don't hear them arguing they meet clearly established through anything other than authority from this Court. They're not talking about a robust consensus. Because there isn't a robust consensus. The cases go different ways. What I would say is, is Sasla is distinguishable because there, all right, we're talking about objective intent. That's the intent conveyed to the person, you know, confronted by the government action. There, that person was unquestionably knew he was being viewed as a suspect. He was held at gunpoint, handcuffed, pat searched. Then they determined, oh, you're not involved in this other thing we were examining. Now you're released. But for the purpose of the seizure, including immediately afterward, there's no dispute. Here, there's no dispute that neither Officer Irish nor any reasonable officer in his position would have thought that this was anything other than a bite that the dog had misdirected. He knew who they were trying to get. He wasn't unaware of what was going on in the police situation, like in Sasla, like in Kua, like in Adams. Any other dog bite case this Court has had. So that is why I would say this is not, there is no precedent squarely governing the specific facts at issue. And that's the language from Casella, and it's especially pertinent in Fourth Amendment situations. With the limited time I have left, I do want to address the excessive force analysis, which this Court would reach should it move past seizure. I do think that the plaintiff grounds his argument on this premise that an officer needs to receive the same type of canine warning as a member of the public because he needs to for qualified immunity purposes. I think, you know, the reality is, the reality is, I think officers are entitled to some notice. I'm not going to stand up in here and say they're, if we're talking about a seizure, that they're not entitled to any notice. But I don't think it's clearly established what that notice needs to consist of. It's nowhere in the policies that he has incorporated. Those are aimed at suspects. We talk about attempts to communicate with team members in our policies when we're talking about communications with fellow responding officers. And officers are differently situated than members of the public when it comes to both their training, their role. They're responding to the scene. They're not exiting, like this Court said in Cua. They're not sheltering in place. They are part of a team that's working to achieve the goal of apprehending the criminal suspect. And there are a lot of impractical or, excuse me, there are a lot of practical problems that also would occur should this Court find it to be, to impose some sort of public-style canine warning on officers. At a minimum, we believe we are entitled to qualified immunity on that question as well. And I would like to reserve the rest of my time for rebuttal. And you may. Thank you. Mr. Noel. Thank you, Your Honor. Good morning. May it please the Court, counsel. My name is Andy Noel, and I represent the appellee in this matter, Officer Daniel Irish. And before I forget, Your Honors, I want to clear up one thing that I find is very important with respect to the appellant's argument. They have a screenshot in their opening brief. It's on page 9. It's frozen at 1447-59 on Deputy McNamara's body-worn camera. It's a still. And they say, no other individuals or law enforcement are visible at this point in time. If you play the video at the same time, you can see the squad cars off to the right of Deputy McNamara. So that's important, not for objective intent or subjective intent, but just to the pure reasonableness of the actions. And when it comes to the seizure, which is the primary issue that the Court has been discussing, in 2003, in Kua, this Court told us that without a warning, a seizure by force is a nearly foregone conclusion. And it incorporated it into Kua. The innocent people, the person at the gravestone, cemeteries don't close in the rain. There's a school for special needs adults on one side and an apartment building on one side. It's the middle of the afternoon on a Tuesday. All these things are open. So the innocent bystanders are all at risk, whoever's closest to the dog. In 2007, Zabla told us that, and Zabla, importantly, that dog was on a leash. And Zabla took Kua, one case from the Eighth Circuit, and said it's clearly established, even when Kua was off leash and Zabla's on leash, that you need to warn. And Judge Montgomery relied on Zabla for the clearly established prong in her decision. And she did so properly, Your Honors, because there's confusion about Zabla here, too. When the officers undertook the search, and it was a bite and find, find and bite type search in Zabla, they didn't know if the person was a suspect or an innocent person, someone who had been injured in the car crash. This is right in the opinion that would have spoken to a reasonable officer after Zabla was published in 2007. In the opinion in Zabla, it says the officer testified he did not know whether the driver of the unoccupied, damaged vehicle was fleeing because it was involved in a crime, or whether the driver had a head injury or needed medical attention. So the notion that the Zabla bite and find and bite scenario was all about a suspect is incorrect. When Zabla does discuss the suspect issue is after the bite has happened. So they're out looking for somebody that maybe could have been involved in a crime, could have been a stolen vehicle. The dog finds them and bites them. Was the person sleeping? The person was sleeping in a park shelter. I thought it was a park bench, but it was a shelter. It was a shelter with bathrooms. And the officer disputed fact, but the officer there made it clear he didn't want that person to get bit subjectively, but he put something in the world that made sure that it was going to happen objectively. The officer's statement after Mr. Zabla was bit was, I gave the dog too much leash. He didn't want that person to get bit, but it doesn't matter. So the notion that Zabla starts with a suspect is incorrect. Is there any relevance? I mean, should we consider what the reasonable plaintiff would consider in wrestling with these issues? In other words, take the grieving widow. Obviously would consider herself seized under my hypothetical situation. But the facts are different in this case. He had an officer involved in a pursuit with the defendant. The officer maybe didn't know, assuming the officer didn't know the dog was released, certainly knew the canine was involved. Does that matter? Does that difference matter here? Not one bit, Your Honor, after Torres. Torres said that the subjective perceptions of the person being- Okay. So I think at this point in time, Your Honor, the only objectively reasonable officer's conduct we're examining is Deputy McNamara's. I don't think we can examine whether- But isn't the fact that, I mean, isn't there a case law going back that says, you know, whether a seizure occurs is whether or not the quote-unquote victim or the plaintiff feels free to leave? And that's a weird line of cases when it applies to a dog bite. But certainly there's a vein running through our cases that look at, kind of as the foundational Fourth Amendment inquiry, is there a seizure or not does seem to, at some point, involve the reasonable victim. And, Your Honor, I think Torres, in a force case, resolves that issue clearly in our favor. The Torres court also talked about Brower being a show-of-authority case and the means intentionally applied being a show-of-authority of authority analysis. Torres talks about force. And I would venture to say that if there was a passenger that the officer didn't know about in the Torres vehicle and the officer is employing force intentionally, not by accident, but willfully shooting, with the intent to restrain, not person A or B, with the intent to restrain, that that passenger, if hit, would have been seized. And Brenlin is another show-of-authority case that supports our argument on this. Brenlin talked about Brower. And one of the arguments against a seizure in Brower was that Brower was seized, this was in Brenlin, Brower was seized because he and not someone else was meant to be stopped. The Supreme Court said in Brenlin, our point was not that Brower alone was the target, but that the officers detained him through means intentionally applied. So when Deputy McNamara gets to this scene, lets his dog out of the vehicle with no leash, we don't even know if he has a leash on his person, there's officers responding. It's a public area. There's a school. Sirens are blaring when that dog gets out of the car unleashed, and it's a fait accompli at that point in time. Whoever the closest person to that dog is is going to be seized. What's your best evidence in the record about the closest person that we all talk about? It's in both your briefs. But what's the best evidence in the record on that? That the closest person was Irish? Yes. No, no, no. That the dog will bite the closest person. Oh, okay. And if it's in our cases, please tell me. Understood. I don't recall those exact words in our cases, but tell me. Yeah. Those exact words are not in the cases, but it is alleged as a matter of fact in the complaint. And the cases, Your Honor, like Vathican and Rogers talk about, when you intentionally deploy a dog whose job it is to find and bite the first person it encounters, the nearest person, that that is a seizure. So you allege it clearly. This is on a motion dismissed, right? Correct. Correct. And the cases that tend to – first of all, there's a couple of court of appeals cases. There's a Fourth Circuit case, Vathican. There's a Ninth Circuit case, Rogers. If the court finds in favor of the appellant here, there's a conflict there. Vathican and Rogers are both clear on this issue. You have a dog – They're not officer cases, though, are they? They're not officer cases. They're not officer cases. But if we look at the intent objectively manifested, and we watch this video – I wish we had a better video. If we had a drone video of this thing, and we watch the intent objectively manifested, and we take away Officer Irish's squad car and his uniform, and we put him in a getaway car, he's going to get seized. And everybody watching that video is going to understand that the dog was put out to get that guy. So that's the objective part of the test, the intent objectively manifested. Whether Officer Irish was standing there going, oh, man, I know my friend Deputy McNamara didn't mean to do this, and I wasn't the one supposed to get bit, that matters not one bit. Well, due address clearly established, since we don't have an officer case in this circuit. Sure. And there's not – you didn't find another one nationwide, did you, at a circuit level? The closest – and I will get to your ultimate question, but I want to talk about the Kilnap case versus City of Cleveland. That's a Sixth Circuit Court of Appeals case after Torres. It's a case where officers respond to a home. There's a person at the home who brandishes a gun. One officer panics and starts running away and shoots over his or her head and hits a fellow officer. That's after Torres. That officer wasn't trying to shoot the fellow officer. It was trying to shoot the person who was brandishing the gun. Kilnap said that's a seizure. So with regard to clearly established in our circuit, I think that Judge Montgomery had it right in her order when she said several courts, including the Eighth Circuit, have held that when a person is bitten by a police dog, deployed to track and bite, that person has been seized, even if it is an innocent third party rather than a suspect. That's what Judge Montgomery took out of Zabla, and it's supported by the opinion itself. So when we look at the appellant's brief here on page 42, they say this court has never stated that force directed toward an unvisualized target constitutes a seizure, regardless of who is eventually impacted by that force. That's incorrect, too. That's exactly what happened in Zabla. And the issue of Zabla being a homeless person waiting to get a job at the local joint the next day versus Officer Irish doing his job, it makes no difference under the Fourth Amendment. If it does, we're on dangerous territory having the subjective intent of an officer rule the day. And with regard to the warning, I can touch on this briefly, Your Honors. The warning is a disputed fact. We allege that no warning was given. That is not blatantly contradicted. We assume there's no warning, right? We assume there's no warning. And Deputy McNamara, frankly, in his report, knew there wasn't a warning. He knew how to report a warning. He reported that the only warning was given after Irish was bit. Doesn't talk about any prior warning. Doesn't hear this canine is over the fence from Officer Jay in his earpiece and think, oh, we're good. You know, officers have been warned. They're positing a situation, Your Honors, where the suspect wasn't warned but a fellow officer was. If that dog would have bit that suspect, that's an unreasonable use of force ten times out of ten. And when we talk about Brower, the big one, one of the big ones, it talks about protecting the accidental effects of otherwise lawful action. This was not lawful action by Deputy McNamara from the moment that dog got its paws on the ground. Unless the Court has any questions, I'm all set. Okay. Thank you for the argument, counsel. Thank you. Ms. McLaren. Thank you. So I do want to address clearly established with regards to the seizure prong, because the Court's recent opinion in Dundon made clear that, you know, it has to be clearly established for purposes of qualified immunity as to whether or not something even is a seizure. So even if this Court decides, yes, this, you know, a bite of a fellow officer, even when, you know, he heard on his earpiece, which we know from the body-worn camera video, canines over the fence, Hennepin is pursuing, that that's still a seizure, then we still have to go through the qualified immunity analysis. But what about the argument that it's an unlawful act anyhow because the suspect was never warned, and so when the dog was sent forth, there was no authority to do so, and therefore whatever force you're using is on its face unreasonable and clearly established because of all the failure to warn cases? Well, Your Honor, I've never totally understood that argument because, again, you still have to look. It has to be an inquiry with, I think Torres makes very clear, this still has to be an inquiry with respect to the plaintiff. So I don't think, and the suspect was warned later, so, I mean, we don't know. He was warned later, right? He was, right, right. But the dog's already on the ground. The dog is on the ground, yes. You've already released the force, right? Isn't that true? Right. Well, and what I think is really interesting about that argument is that let's say Officer, excuse me, Deputy McNamara had released the dog, and given the warning, there's no dispute the plaintiff would not have heard it. So you could end up in this weird instance where he's still bitten, there's been a warning, and we're still right back here. I do say I'm out of time. If the Court has further questions. No, as long as Judge Erickson wants to pursue it. Okay. Thank you. I respectfully ask the Court to reverse. Thank you. Thank you both for your argument. Case number 23-3034 is submitted for decision by the Court.